# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

Case No. 2:25-cv-765

M.A., on behalf of himself and a class of similarly situated individuals,

    *Plaintiff,*

v.

KEVIN GUTHRIE et al.,

    *Defendants*.

### PLAINTIFF'S MOTION FOR LEAVE TO PROCEED ANONYMOUSLY AND MEMORANDUM IN SUPPORT THEREOF

Plaintiff moves, for the reasons detailed in his complaint and the memorandum of law below, to proceed in this suit under his initials. In support of this motion, Plaintiff states:

1. Plaintiff brings this lawsuit challenging his detention at the immigration detention facility known as "Alligator Alcatraz." Public officials have referred to the people detained there as "the worst of the worst." Placing Plaintiff's name into the public record would dangerously brand him with these inaccurate labels.

1

2. Additionally, Plaintiff is seeking protection from removal based on persecution in his home country and the threat of violence against him if he returns. As such, revealing his identity will heighten the danger he faces in his country of origin.

WHEREFORE, Plaintiff respectfully requests that this Court grant this motion to proceed under pseudonym, and grant such other relief as may be reasonable and just.[1]

I. **INTRODUCTION**

Plaintiff brings this lawsuit challenging his detention by the State of Florida at the immigration detention facility known as "Alligator Alcatraz" ("the facility"). At a time of increasingly harsh anti-immigrant rhetoric in Florida and across the country, immigrants detained at the facility are subjected to extreme vitriol, including from officials at the highest levels of government, who have referred to the people detained there as "the worst of the worst," "the worst scumbags, "some of the most vicious people on the planet," and many other similar public comments. Placing Plaintiff's name into the public record would thus dangerously brand him with these inaccurate labels, subjecting him to severe stigma and threats of violence. *See C.M. v. Noem*, No. 1:25-cv-23182, Dkt. 15 (S.D. Fla. July 18, 2025) (granting

---

[1] All State Defendants oppose this motion. Defendant Mordant has not yet been served and his position could not be obtained.

leave to proceed anonymously in case brought by detainees at Alligator Alcatraz); *see also Doe v. Rhoden*, No. 3:25-cv-00804, Dkt. 28 (M.D. Fla. Aug. 28, 2025) (granting leave to proceed anonymously in case brought by former Baker County Detention Center ICE detainee).

Anonymity is also warranted because Plaintiff is seeking protection from removal based on persecution in his home country and the threat of violence against him if he returns. As such, revealing his identity publicly heightens the danger he faces in his country of origin. It is routine for noncitizen litigants to proceed under pseudonym in these circumstances. Plaintiff therefore seeks leave to proceed anonymously, under the following initials: M.A.

## II. STATEMENT OF FACTS

Plaintiff M.A. has lived in the United States since 2018. He is married to a U.S. citizen and has five U.S.-citizen stepchildren. He entered the country on a visa and subsequently applied for asylum. He has a work permit, a social security card, and a driver's license. On July 23, Plaintiff was arrested outside his home. On July 26, Plaintiff was taken to the facility.

Based on his detention at the facility, Plaintiff is among those that federal and state officials have branded as the "worst of the worst" and "some of the most vicious people on the planet." *See* Press Release, *DHS Highlights Worst of the Worst Criminal Illegal Aliens Arrested in Florida, Including Murderers, Pedophiles, and*

*Rapists Ahead of Opening of Alligator Alcatraz* (June 30, 2025). The press release states that "violent criminal illegal aliens," including "[m]urderers, [p]edophiles, and [r]apists," "could end up being detained" at the facility. *Id.* DHS Secretary Kristi Noem stated that the facility would hold "the worst scumbags who entered our country." *Id.* And President Trump promised on social media that "this facility will house some of the most menacing migrants—some of the most vicious people on the planet." *See* White House, Alligator Alcatraz, X (Jul. 1, 2025, 5:37 PM), https://perma.cc/CR8T-LG7C. However, a large portion of the people detained at the facility—including Plaintiff—have no criminal charges or convictions. Ana Ceballos et al., *Exclusive: Hundreds at Alligator Alcatraz Have No Criminal Charges, Miami Herald Learns*, MIAMI HERALD (July 13, 2025), https://perma.cc/B7EW-UQ7C.

### III.  LEGAL STANDARD

While Federal Rule of Civil Procedure 10(a) requires that complaints "must name all the parties," Fed. R. Civ. P. 10(a), the Eleventh Circuit has long recognized that plaintiffs may proceed anonymously where "the plaintiff has a substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'" *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992) (*per curiam*) (quoting *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981)). "Whether a party's right to privacy outweighs the presumption of

4

openness is a 'totality-of-the-circumstances question.'" *Doe v. Neverson*, 820 F. App'x 984, 986 (11th Cir. 2020) (quoting *In re Chiquita Brands Int'l Inc.*, 965 F.3d 1238, 1247 n.5 (11th Cir. 2020)).

Under Eleventh Circuit precedent, the "first step" is for courts to consider the three factors set forth in *Chiquita*: whether the party seeking to proceed anonymously "(1) is challenging government activity; (2) would be compelled, absent anonymity, to disclose information of utmost intimacy; or (3) would be compelled, absent anonymity, to admit an intent to engage in illegal conduct and thus risk criminal prosecution." *In re Chiquita Brands*, 965 F.3d at 1247 (citing *Plaintiff B v. Francis*, 631 F.3d 1310, 1315-16 (11th Cir. 2011), and *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe,* 599 F.2d 707, 713 (5th Cir. 1979) (hereinafter "*SMU*")[2]; *see Doe v. Wantong Int'l, Inc.*, No. 6:25-CV-179-PGB-DCI, 2025 WL 712762 (M.D. Fla. Mar. 5, 2025) (employing the *Chiquita* analysis in granting leave to proceed pseudonymously). Courts should then consider "*all* the circumstances of a given case" to decide whether a plaintiff's privacy concerns outweigh the general requirement of disclosure. *Plaintiff B*, 631 F.3d at 1316 (quoting *Frank*, 951 F.3d at 323) (emphasis in original). In particular, courts should assess factors such as plaintiffs' ages and personal circumstances,

---

[2] Decisions of the Fifth Circuit Court of Appeals handed down on or before September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

whether they would face threats of violence or physical harm if proceeding publicly, and whether plaintiffs' "anonymity pose[s] a unique threat of fundamental unfairness to the defendant." *Id.* (citing *Stegall*, 653 F.2d at 186 and *SMU*, 599 F.2d at 713).

## IV. ARGUMENT

Here, the *Chiquita* factors weigh in Plaintiff's favor because Plaintiff is challenging government activity, and because using his real name could reveal sensitive, personal information about Plaintiff's immigration status and history. Proceeding anonymously will not pose any unfairness to Defendants, who can have access to Plaintiff's identity under seal. And the totality of the circumstances overwhelmingly supports Plaintiff's ability to proceed using his initials.

Indeed, another district court in Florida recently concluded that similarly situated plaintiffs detained at the same facility should be able to proceed by pseudonym "given that they face the potential of substantial harm in the United States and in their countries of origin from attaching their names to these proceedings." *See C.M. v. Noem*, No. 1:25-cv-23182, Dkt. 15. The Middle District of Florida also recently granted a similar motion to proceed anonymously to protect a plaintiff's privacy interests in her challenge to government action at a different ICE detention facility in Florida. *Doe v. Rhoden et al.*, No. 3:25-cv-00804, Dkt.

28.

**A. Plaintiff is challenging government action.**

Plaintiff satisfies the first *Chiquita* factor because he is challenging government activity. Where plaintiffs are suing government entities, courts have found less need for disclosure of their identities, because governments, unlike private individuals, do not suffer reputational or economic harm from defending a civil action. *Frank*, 951 F.2d at 323-24 (discussing *SMU*, 599 F.2d at 713); *see also Stegall*, 653 F.2d at 185-86.

Plaintiff here challenges the State of Florida's authority to detain him pursuant to 8 U.S.C. § 1357(g). All Defendants are sued only in their official governmental capacities. Plaintiff thus satisfies the first factor, which weighs in favor of granting anonymity. *See S.B. v. Fla. Agric. & Mech. Univ. Bd. of Trustees*, 823 F. App'x 862, 866 (11th Cir. 2020) (noting district court's finding that plaintiff's action against a public Florida university was challenging government activity and therefore this factor weighed in favor of granting anonymity).

**B. The sensitive nature of Plaintiff's personal information justifies allowing him to proceed using initials.**

Plaintiff's immigration status, as well as his immigration history and the relief he has applied for, are sensitive personal information of "utmost intimacy." *Plaintiff B*, 631 F.3d at 1316 (discussing *SMU*, 599 F.2d at 712-13).

The Eleventh Circuit has recognized that revealing someone's immigration

7

status "could lead to criminal prosecution, harassment, and intimidation." *Hisp. Int. Coal. of Ala. v. Gov. of Ala.*, 691 F.3d 1236, 1247 (11th Cir. 2012). This is particularly true of undocumented immigrants, who face especially severe repercussions if their identities are revealed. Courts therefore frequently allow them to proceed anonymously. *Id.* at fn. 8 (noting that "this reality…has led federal courts…to permit [] plaintiffs to proceed anonymously in immigration-related cases"); *see, e.g.*, *Doe v. Hobson*, 300 F.R.D. 576, 578 (M.D. Ala. 2014) (granting undocumented plaintiffs' motion to proceed under pseudonyms); *Cent. Ala. Fair Hous. Ctr. v. Magee*, 835 F. Supp. 2d 1165, 1169 (M.D. Ala. 2011) (individual noncitizen plaintiffs challenging an Alabama statute proceeded under pseudonym), *vacated on other grounds sub nom. Cent. Ala. Fair Hous. Ctr. v. Comm'r, Ala. Dep't of Revenue*, 2013 WL 2372302 (11th Cir. May 17, 2013); *R.F.M. v. Nielsen*, 365 F. Supp. 3d 350, 370-72 (S.D.N.Y. 2019) (noting, among other factors, that "immigration matters are treated with sensitivity under the Federal Rules of Civil Procedure and the INA."); *Lozano v. City of Hazelton*, 620 F.3d 170, 194-95 (3d Cir. 2010), *vacated on other grounds*, 563 U.S. 1030 (2011); *Ga. Latino All. for Hum. Rts. v. Deal*, 793 F. Supp. 2d 1317 (N.D. Ga. 2011), *aff'd in part, rev'd in part on other grounds sub nom. Ga. Latino All. for Hum. Rts. v. Gov. of Ga.*, 691 F.3d 1250 (11th Cir. 2012); *Plyler v. Doe*, 457 U.S. 202 (1982); *but cf. Farmworker Ass'n of Fla., Inc. v. DeSantis*, 716 F. Supp. 3d 1312, 1318 (S.D. Fla. 2024)

(hereinafter "*FWAF*") (concluding that, in challenge to law prohibiting transport of undocumented noncitizens, plaintiffs' immigration status was not information of the utmost intimacy); *Hisp. Fed'n v. Byrd*, No. 23-cv-00218-MW-MAF (N.D. Fla 2023), Doc. No. 78, at 4 (noting that a plaintiff's Temporary Protected Status did not necessarily implicate a sufficient privacy concern).[3]

Plaintiff's immigration status and history are directly relevant to this case, as Plaintiff's detention by the State of Florida is premised on his alleged violations of various federal immigration laws. Compelling Plaintiff to disclose his identity and immigration status would thus expose him to the same risks the Eleventh Circuit warned against in *Hispanic Interest Coalition*, and which courts in this Circuit have found warranted leave to proceed anonymously. *See Hobson*, 300 F.R.D. 576; *Magee*, 835 F. Supp. 2d 1165; *Y.A.P.A. v. Trump*, No. 4:25-cv-144 (CDL), 2025 WL 1454014 (M.D. Ga. May 21, 2025) (allowing anonymity for non-citizen plaintiff challenging removal).

Plaintiff's immigration proceedings raise a host of sensitive personal issues because he is seeking asylum. The fact that Plaintiff is seeking refuge in the United

---

[3] This case is distinct from *FWAF* and *Byrd* in numerous ways. Unlike in those cases, Plaintiff here, through his place of detention, has been publicly branded by federal and state officials as being among the "worst of the worst" and "the most vicious people on the planet." *See infra* Section IV(C). Plaintiff also has a more sensitive immigration status because he is seeking asylum based on the threat of persecution in his home country.

9

States—and that he fears danger in his country of origin—is information "of the utmost intimacy" because it would expose him to heightened threats of violence or harm if his identity were made public. Recognizing this, federal immigration laws and regulations require confidentiality in similar circumstances. For example, the Immigration and Nationality Act specifically prohibits use or disclosure of any information relating to a noncitizen who applies for certain humanitarian forms of relief, with limited exceptions. *See* 8 U.S.C. § 1367(a)(2) & (b). The asylum regulations similarly provide that "[i]nformation contained in or pertaining to" any asylum application, including information that "indicate[s] that a specific alien has applied for . . . asylum," shall "be protected from disclosure." 8 C.F.R. § 208.6(a), (b) (2025). The U.S. government's own position that the government may not disclose even the mere fact that someone applied for asylum demonstrates the importance of protecting this information, which makes it "information of the utmost intimacy." This factor thus weighs in favor of allowing Plaintiff to proceed under a pseudonym. *See C.M. v. Noem*, No. 1:25-cv-23182, Dkt. 15 (granting leave to proceed anonymously in case brought by detainees at the same facility because plaintiffs "face the potential of substantial harm . . . in their countries of origin").

### C. The remaining *Plaintiff B/Stegall* factors and the totality of the circumstances support granting Plaintiff's motion for leave to proceed anonymously.

Plaintiff fears physical harm as well as harassment and social stigma should

his name and participation in this lawsuit be made public. *See A.D. v. Cavalier Mergersub LP*, No. 2:22-cv-095-JES-NPM, 2022 WL 4354842, at *3 (M.D. Fla. Sept. 20, 2022) ("potential risk for retaliation and harm" weighs in favor of proceeding anonymously). Anonymity is proper to protect Plaintiff from retaliation by members of the public and law enforcement, especially in today's political environment, where State and Federal officials have gone to great lengths to attach a social stigma to people who are detained at this particular facility. *See Doe v. Predator Catchers, Inc.*, 343 F.R.D. 633, 637 (M.D. Fla. 2023) (while "mere embarrassment" may not justify proceeding anonymously, a showing of actual "social stigma" might).

Immigration policy in general is currently a matter of intense debate and increasingly heated rhetoric in Florida and throughout the nation. Courts have noted that possible social stigma due to a plaintiff's personal connection to an intensely politicized issue can justify leave to proceed anonymously. *See, e.g., Frank*, 951 F.2d at 324 (discussing cases in which courts allowed plaintiffs to proceed anonymously in situations involving mental illness, homosexuality, and gender identity); *Roe v. Aware Woman Ctr. For Choice*, 253 F.3d 678, 687 (11th Cir. 2001) (holding that, against backdrop of intense political debate around abortion, plaintiff's having had an abortion justified granting leave to proceed anonymously); *Doe v. Ladapo*, 676 F. Supp. 3d 1205, 1215 (N.D. Fla. 2023) (noting

that plaintiffs challenging Florida law prohibiting transgender minors from receiving puberty blockers proceeded under pseudonym).

Plaintiff here fears that his detention at this facility could subject him to significant stigma given that officials at the highest level of the government have referred to people detained there in extremely stigmatizing terms.  Indeed, in an official press release, the Department of Homeland Security ("DHS") referred to the people detained at "Alligator Alcatraz" as "the worst of the worst."  *See* Press Release, *DHS Highlights Worst of the Worst Criminal Illegal Aliens Arrested in Florida, Including Murderers, Pedophiles, and Rapists Ahead of Opening of Alligator Alcatraz* (June 30, 2025).  The press release states that "violent criminal illegal aliens," including "[m]urderers, [p]edophiles, and [r]apists," "could end up being detained" at the facility.  *Id.*  DHS Secretary Kristi Noem stated that the facility would hold "the worst scumbags who entered our country."  *Id.*  And President Trump promised on social media that "this facility will house some of the most menacing migrants—some of the most vicious people on the planet."  *See* White House, Alligator Alcatraz, X (Jul. 1, 2025, 5:37 PM), https://perma.cc/CR8T-LG7C.

These accusations come in the midst of an alarming increase in violence against immigrants and perceived immigrants, with harassment against immigrants widespread and routine across the United States. *See, e.g.*, Pocharapon

Neammanee, *People Are Impersonating ICE Agents to Harass Immigrants and Commit Crimes, Police Say*, YAHOO NEWS (Feb. 6, 2025), https://ca.news.yahoo.com/people-impersonating-ice-agents-harass-005631878.html/; Ashleigh Fields, *Springfield Bomb Threat Used 'Hateful' Language Towards Migrants, Haitians*, THE HILL (Sept. 12, 2024, 8:13 PM), https://thehill.com/homenews/campaign/4877602-ohio-bomb-threat-immigrant-hate/.

In Florida, hate crime incidents have increased dramatically since 2021, and almost half of hate crimes in 2023 were motivated by race, ethnicity, and ancestry. *See Hate Crimes: Florida*, U.S. DEP'T OF JUST., https://www.justice.gov/hatecrimes/state-data/florida (last visited Sept. 16, 2025) (stating that hate crimes increased from 1 in 2021 to 161 in 2022 to 249 in 2023, 121 of which were motivated by race, ethnicity, and ancestry). For example, the Department of Justice reported an incident in October 2023 where "[a] Florida man pleaded guilty to assaulting a postal worker wearing a hijab[,]" yelling "go back to your country" while "attacking her, spitting on her, and removing her hijab." *Id.* This has been a persistent problem in Florida. In 2015, an 18-year-old Guatemalan immigrant was murdered by three men who claimed to be targeting immigrants, or "Guat-hunting." *A Hate Crime Haunts Jupiter and Its Latino Community*, WLRN (July 13, 2015), https://www.wlrn.org/news/2015-07-13/a-hate-crime-haunts-

jupiter-and-its-latino-community.

Given the intense politicization of immigration and harassment and violence against immigrants nationally, and especially in Florida, Plaintiff fears even greater harassment, discrimination, and violence targeting him should his identity be revealed as challenging the State's immigration policies. *See Wantong*, 2025 WL 712762, at *2 (finding that plaintiff's "reasonable fear of retaliation" weighed in favor of permitting the use of a pseudonym). Thus, because denying Plaintiff leave to proceed anonymously places him at real risk of harassment, threats, or even violence, Plaintiff should be permitted to proceed under a pseudonym. *See C.M. v. Noem*, No. 1:25-cv-23182, Dkt. 15 (granting leave to proceed anonymously in case brought by detainees at the same facility because plaintiffs "face the potential of substantial harm in the United States").

Finally, in contrast with the Plaintiff's heightened interest in protecting his identity, the public's interest in knowing his identity is minimal. Although the issues in this lawsuit are a matter of significant public concern because they involve governmental entities and actors, the identity of the Plaintiff will add little to the public understanding of the case. *See, e.g.*, *Wantong*, 2025 WL 712762, at *2 (granting motion to proceed anonymously while noting that the proceedings would otherwise "remain open to the public"); *see also Doe v. CoreCivic, Inc.*, No. 4:20-cv-01828, 2020 WL 3640058, at *2 (S.D. Tex. July 6, 2020) (finding public interest

weighed in favor of anonymity when "most of the pertinent facts [are] made on the public record" and the only non-public aspect "is [Plaintiffs'] actual identity"). The public will have access to the filings and proceedings in this case. The use of a pseudonym would not hinder the public's right to information about the ultimate legal question at issue: whether 8 U.S.C. § 1357(g) provides Defendants authority to detain people at the facility. Thus, the public interest weighs in favor of granting Plaintiffs' motion.

**D. There is no prejudice to the Defendants.**

Proceeding pseudonymously will not prejudice Defendants. In this case, there is simply no "threat of fundamental unfairness to the defendant." *Plaintiff B*, 631 F.3d at 1316. Subject to a protective order, Plaintiff can provide Defendants with his real name. As such, granting this motion will in no way prejudice Defendants' ability to conduct discovery or defend this case. *See id.* at 1319 (granting leave to proceed anonymously did not bar defendants "in building a defense for trial"); *Aware Woman Ctr.*, 253 F.3d at 687 (reasoning that entry of protective order is sufficient to obviate any potential prejudice to defendant). Nor are Plaintiff's identity or personal details necessary for the State to defend against the legal claim that 8 U.S.C. § 1357(g) does not provide authority to detain people at the facility. That facial legal claim applies equally to everyone detained at the facility, regardless of their personal circumstances.

## V. CONCLUSION

For the foregoing reasons, Plaintiff should be permitted to proceed in this suit under his initials.

Dated: September 17, 2025

Respectfully submitted,

/s/ *Spencer Amdur*

Amy Godshall (Fla. Bar No. 1049803)
Daniel Tilley (Fla. Bar No. 102882)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF FLORIDA
4343 West Flagler Street, Suite 400
Miami, FL 33134
T: (786) 363-2714
agodshall@aclufl.org
dtilley@aclufl.org

Miriam Haskell (Fla. Bar No. 69033)
Alana Greer (Fla. Bar No. 92423)
COMMUNITY JUSTICE PROJECT, INC.
3000 Biscayne Blvd. Suite 106
Miami, Florida 33137
T: (305) 907-7697
miriam@communityjusticeproject.com
alana@communityjusticeproject.com

Mark Fleming*
Mark Feldman*
NATIONAL IMMIGRANT JUSTICE CENTER
111 W. Jackson Blvd., Suite 800
Chicago, Illinois 60604
T: (312) 660-1628
mfleming@immigrantjustice.org
mfeldman@immigrantjustice.org

Spencer Amdur*
Michael K.T. Tan*
Cody Wofsy*
Hannah Steinberg*
Corene Kendrick*
Kyle Virgien*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
T: (415) 343-0770
samdur@aclu.org
m.tan@aclu.org
cwofsy@aclu.org
hsteinberg@aclu.org
ckendrick@aclu.org
kvirgien@aclu.org

Omar Jadwat*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 549-2660
ojadwat@aclu.org

Eunice H. Cho*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th St. N.W., 7th Floor
Washington, DC 20005

T: (202) 548-6616
echo@aclu.org

*Attorneys for Plaintiff*
*\*Admitted pro hac vice*

## CERTIFICATE OF CONFERENCE

On September 12, 2025, counsel for Plaintiff conferred via phone with opposing counsel, who represents all Defendants except Defendant Mordant, and who stated that these Defendants oppose this motion. Because Defendant Mordant has not yet been served, counsel for Plaintiff was unable to obtain Defendant Mordant's position on this motion.

/s/ *Spencer Amdur*
Spencer Amdur


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished by electronic service through the CM/ECF Portal on September 17, 2025, to all counsel of record. Plaintiff will also email a courtesy copy of this filing to counsel for Defendants.

/s/ *Spencer Amdur*
Spencer Amdur