UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| M.A., on behalf of himself and a class of similarly situated individuals, *et al.*,<br><br>    *Plaintiff*,<br><br>        v.<br><br>KEVIN GUTHRIE, in his official capacity as Executive Director of the Florida Division of Emergency Management, *et al.*,<br><br>    *Defendants*. | No. 2:25-cv-765-KCD-DNF |

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION TO PROCEED ANONYMOUSLY**

"A lawsuit is a public event." *In re: Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1242 (11th Cir. 2020). "[T]hose using the courts must be prepared to accept the public scrutiny that is an inherent part of public trials," *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000), because "[t]he people have a right to know who is using their courts." *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997) (Posner, C.J.).

It is therefore "well settled" that there is a "strong presumption against party pseudonymity." Eugene Volokh, *The Law of Pseudonymous Litigation*, 73 Hastings L.J. 1353, 1367 (2022). Indeed, plaintiffs may only proceed anonymously in "exceptional case[s]." *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir.

1

1992). From abortion, to mask mandates during the pandemic, to gun ownership, plaintiffs have proceeded under their own names.[1] Cases involving immigrants are no different. *See, e.g.*, *Farmworker Ass'n of Fla. v. DeSantis*, 716 F. Supp. 3d 1312, 1326 (S.D. Fla. 2024) (Altman, J.); *Doe v. Merten*, 219 F.R.D. 387, 392 (E.D. Va. 2004). MA identifies no basis to depart from these ordinary precepts. The Court should deny his motion to proceed anonymously.

## BACKGROUND

Plaintiff MA challenges Florida's ability to operate a state detention facility to assist federal officials in the detention of illegal aliens. MA is an alien who has lived in the United States since 2018. *See* DE1 ¶ 9. Though he has given the Court very little about his immigration status, he initially entered on a visa and subsequently applied for asylum. DE1 ¶ 10. On July 23, 2025, officials arrested MA, but MA does not identify which officials took custody of him. DE1 ¶ 11. Since July, state officials have held MA at a state detention center in South Florida known as Alligator Alcatraz. DE1 ¶ 12. That is a facility where state officials hold immigration detainees on behalf of ICE. DE68-20

---

[1] *Planned Parenthood of Sw. & Cent. Fla. v. State*, No. 2022 CA 912, 2022 WL 2436704, at *1 (Fla. 2nd Cir. Ct. Jul. 5, 2022) (15-week abortion ban); *Health Freedom Def. Fund, Inc. v. Biden*, 572 F. Supp. 3d 1257, 1260 (M.D. Fla. 2021) (mask mandate); *Does v. Mills*, No. 1:21-CV-242, 2022 WL 1747848, at *4 (D. Me. May 31, 2022) (denying anonymity for challenge to mask mandate); *Nat'l Rifle Ass'n of Am., Inc. v. Bondi*, No. 4:18-CV-137, 2018 WL 11014101, at *2–5 (N.D. Fla. May 13, 2018) (denying anonymity for challenge to gun regulations).

¶ 25. MA claims that the Immigration and Nationality Act (INA) prohibits Florida from operating such a facility to assist ICE and seeks to represent a class of all detainees at Alligator Alcatraz. DE1 ¶¶ 99–109; DE4. MA seeks to do all of this anonymously. Mot. 1.

**LEGAL STANDARD**

The Federal Rules of Civil Procedure require "[e]very pleading" to "name all the parties." Fed. R. Civ. P. 10(a); *see also* Fed. R. Civ. P. 17(a)(1) (requiring that each "action must be prosecuted in the name of the real party in interest"). Those rules reflect more than administrative convenience; they embody the Nation's tradition that "[l]awsuits are public events" and the public's "legitimate interest in knowing all of the facts involved, including the identities of the parties." *Frank*, 951 F.2d at 322, 324. Those constitutional interests create a "strong presumption" against anonymity. *Plaintiff B v. Francis*, 631 F.3d 1310, 1315 (11th Cir. 2011).

Thus, only the "exceptional case" warrants anonymity. *Frank*, 951 F.2d at 323. A case is "extraordinary" if a plaintiff can demonstrate that the totality of circumstances reveals "a substantial privacy right [that] outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Chiquita*, 965 F.3d at 1247. In that analysis, courts chiefly consider whether the plaintiff "(1) is challenging government activity; (2) would be compelled, absent anonymity, to disclose information of utmost intimacy; or

3

(3) would be compelled, absent anonymity, to admit an intent to engage in illegal conduct and thus risk criminal prosecution." *Id*. The presence of any one of these factors, however, is not "dispositive," and a court should "carefully review all the circumstances of a given case" to see whether a plaintiff's privacy interests outweigh the constitutional presumption of openness. *Frank*, 951 F.2d at 323. Other factors include whether the plaintiff is a minor, whether he faces a real and specific threat of physical harm absent anonymity, and whether anonymity would pose a "unique threat of fundamental unfairness to the defendant." *Plaintiff B*, 631 F.3d at 1316.

## ARGUMENT

MA fails to demonstrate that the totality of the circumstances overcomes the strong presumption against anonymity. None of the primary *Chiquita* factors weigh in his favor. At best, MA might have engaged in illegal activity in the past (overstaying his visa). But given the other factors—including "the most important factor" of the intimacy of the information involved—MA has failed to rebut the constitutional presumption of openness in judicial proceedings. *Farmworker*, 716 F. Supp. 3d at 1317. Indeed, MA largely reiterates arguments already rejected by courts in the Northern and Southern Districts of Florida. *See id.* at 1316–26; *Hisp. Fed'n v. Byrd*, No. 4:23-CV-218, 2023 WL 11760524, at *2 (N.D. Fla. July 17, 2023).

4

## I. THE GOVERNMENT-ACTIVITY PRONG DOES NOT SUPPORT ANONYMOUS PLEADING.

MA is incorrect that the government-activity prong supports his request. Mot. 7. A plaintiff's choice to challenge government activity "does not weigh in favor" of anonymity. *Frank*, 951 F.2d at 324. This factor instead provides a higher standard for anonymity when the plaintiff "su[es] private individuals rather than a government agency" because of the reputational damage that private defendants face. *Id.* But that one-way ratchet does not provide "reason" to grant a plaintiff's request for anonymity when the plaintiff is suing the government. *Id.*; *see also Farmworker*, 716 F. Supp. 3d at 1316–17; *Doe v. Fla. Gulf Coast Univ. Bd. of Trs.*, No. 23-13063, 2024 WL 4224254, at *2–3 (11th Cir. Sept. 18, 2024) (per curiam). Far from it, "[n]o published opinion . . . has ever permitted a plaintiff to proceed anonymously merely because the complaint challenged government activity." *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 686 (11th Cir. 2001). This factor thus weighs neutrally.

## II. USING HIS REAL NAME WOULD NOT COMPEL MA TO DISCLOSE INFORMATION OF THE UTMOST INTIMACY.

Turning to the "most important factor," *Farmworker*, 716 F. Supp. 3d at 1318, MA claims that his "immigration status, as well as his immigration history and the relief he has applied for," qualify as "personal information of the utmost intimacy." Mot. 7. That argument fails to move the needle on anonymity for two reasons.

5

First, MA's immigration status does not warrant anonymity because "immigration status is not 'information of the utmost intimacy.'" *Farmworker*, 716 F. Supp. 3d at 1320. In the context of anonymity, "'information of the utmost intimacy' is a limited category, historically yielding a confined application." *Id.* at 1318 (cleaned up). In those narrow, repeatedly recognized categories, utmost intimacy refers to information about sexuality, medical information, or sexual exploitation of minors. *See id.* at 1318–19; *see also, e.g., S. Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe*, 599 F.2d 707, 712–13 (5th Cir. 1979); *Frank*, 951 F.2d at 324; *Doe v. Neverson*, 820 F. App'x 984, 988 (11th Cir. 2020) (per curiam). Outside of those contexts, courts are "reluctant to grant anonymity." *Farmworker*, 716 F. Supp. 3d at 1319. And even in more sensitive contexts, anonymously pleading is the exception, not the rule. *See, e.g., Doe v. Sheely*, 781 F. App'x 972, 974 (11th Cir. 2019) (sexual assault victim alleging risk of physical harm); *Doe v. Ocean Reef Cmty. Ass'n*, No. 4:19-cv-10138, 2019 WL 5102450, at *3 (S.D. Fla. Oct. 11, 2019) (similar).

This case fits within none of those categories. To the extent MA asks the Court to recognize a new category of sensitive information, courts have repeatedly rejected the argument that immigration status qualifies as sufficiently intimate to proceed anonymously. *See, e.g., Farmworker*, 716 F. Supp. 3d at 1320; *Byrd*, 2023 WL 11760524, at *1–2; *Doe I v. City of Alabaster*, No. 2:11-cv-3448, 2012 WL 13088882, at *5 (N.D. Ala. Apr. 26, 2012) ("[U]ndocumented

6

status . . . is not highly sensitive nor personal[.]"); *Day v. Sebelius*, 227 F.R.D. 668, 676–80 (D. Kan. 2005); *Merten*, 219 F.R.D. at 392. *Doe #1 v. Austin*, No. 8:22-cv-121, 2022 WL 2116797, at *3 (M.D. Fla. June 10, 2022).

Seeking to avoid that conclusion, MA cites cases brought by anonymous illegal aliens. Mot. 8–9. To him, those cases establish that courts "frequently allow [illegal immigrants] to proceed anonymously." *Id.* Not a single case he cites controls. They lack binding effect because they (1) are district court or out-of-circuit cases;[2] (2) defendants did not oppose anonymity;[3] (3) the court did not discuss or analyze anonymity;[4] and (4) one case involved minors and implicated other information that courts typically see as "intimate."[5] *See also Farmworker*, 716 F. Supp. 3d at 1319–20 (distinguishing nearly all of MA's cases). For instance, MA begins with an offhand observation from dicta in a

---

[2] *See, e.g.*, *Lozano v. City of Hazelton*, 620 F.3d 170, 194–95 (3d Cir. 2010), *vacated on other grounds*, 563 U.S. 1030 (2011); Paperless Order, *C.M. v. Noem*, No. 1:25-cv-23182 (S.D. Fla. July 30, 2025), ECF No. 33 (granting anonymous treatment based on a "potential of substantial harm in the United States and in [plaintiffs'] countries of origin," not based on immigration status).

[3] *See Doe v. Hobson*, 300 F.R.D. 576, 577 (M.D. Ala. 2014) ("Defendants do not firmly oppose or support Plaintiffs' request to withhold their identities from the public . . . ."); *Y.A.P.A. v. Trump*, 785 F. Supp. 3d 1350, 1354 n.1 (M.D. Ga. 2025) (noting that "the Government did not substantively oppose" the motion).

[4] *Cent. Ala. Fair Hous. Ctr. v. Magee*, 835 F. Supp. 2d 1165, 1169 (M.D. Ala. 2011), *vacated*, No. 11-16114, 2013 WL 2372302 (11th Cir. May 17, 2013); *Ga. Latino All. for Hum. Rts. v. Deal*, 793 F. Supp. 2d 1317, 1321–22 (N.D. Ga. 2011), *aff'd in part, rev'd in part on other grounds sub nom. Ga. Latino All. for Hum. Rts. v. Gov. of Ga.*, 691 F.3d 1250 (11th Cir. 2012); *see generally Plyler v. Doe*, 457 U.S. 202 (1982).

[5] *R.F.M. v. Nielsen*, 365 F. Supp. 3d 350, 370–72 (S.D.N.Y. 2019)

7

footnote in *Hispanic Interest Coalition of Alabama v. Governor of Alabama*, 691 F.3d 1236, 1247 n.8 (11th Cir. 2012). But that case did not involve a motion to proceed anonymously, it discussed whether disclosure of the immigration status of minors would burden their access to public education. *See id.* at 1242.

Second, even if his immigration status was sensitive, that information is irrelevant to his claims. At their core, MA's claims allege that Florida cannot operate an immigration detention center—no matter the status of the individuals there. DE1 ¶¶ 99–109. The key question in this case is not who ICE is detaining, but only whether the State has legal authority under the INA to hold them at Alligator Alcatraz on ICE's behalf. MA's failure to identify his own immigration status highlights that it is unnecessary to his claims. He never alleges that he is present in the United States illegally, nor does he allege that one would be able to determine his immigration status from his name alone. He merely claims that he entered the United States with a visa, claimed asylum sometime in the past, and alleges that Defendants lack authorization to hold him. *See* DE1 ¶¶ 9–12. MA cannot "freely volunteer[]" sensitive information so he can "bypass the requirements of Fed. R. Civ. P. 10." *Vicente v. Barnett*, No. 4:05-cv-157, 2005 WL 8160475, at *2 (D. Ariz. Oct. 3, 2005).

## III. MA IS NOT COMPELLED TO ADMIT AN INTENT TO ENGAGE IN ILLEGAL CONDUCT AND RISK CRIMINAL PROSECUTION.

MA entirely skips *Chiquita*'s third prong. That prong asks whether a plaintiff "would be compelled, absent anonymity, to admit an intent to engage in illegal conduct and thus risk criminal prosecution." *Chiquita*, 965 F.3d at 1247. MA holds the burden of showing that he is entitled to anonymity, so this omission cuts against him. Quite beyond that, MA has taken great pains in his pleadings to stop short of admitting that he intends to engage in illegal conduct. That strategy weighs against anonymity. *See Doe v. City of Vero Beach*, No. 2:19-cv-14212, 2019 WL 4277045, at *3 (S.D. Fla. Sept. 10, 2019) ("Plaintiff here is specifically *not* admitting any intent to engage in prohibited conduct." (emphasis in original)).

Nor could MA meet this factor in any event. He would not be "compelled" to release information about his immigration status because his immigration status and any related crimes are irrelevant to his claim that Florida lacks authority to operate Alligator Alcatraz. *See supra* 8. Even if MA had violated immigration laws and that was the reason for his detention by ICE, *Chiquita*'s third prong only contemplates *future* conduct. *See Butler v. Florida*, No. 0:25-cv-60464, 2025 WL 1634975, at *3 (S.D. Fla. June 9, 2025) (Plaintiff's sex offender status "does not increase the chances of admitting to illegalities.").

## IV. OTHER FACTORS SIMILARLY CUT AGAINST ANONYMITY.

MA also argues that two other factors weigh in favor of anonymity: (1) his fear of physical harm and harassment from the social stigma of being detained at Alligator Alcatraz, and (2) the public's interest in knowing his particular identity is (purportedly) minimal. Mot. 10–15. But neither argument supports anonymity here. What is more, MA's detention status is likely a matter of public record, another consideration that cuts against him.

### A. MA has failed to present particularized evidence of any real threat of physical harm or harassment.

MA has not met his burden to "produce particularized evidence demonstrating that [he] would be subjected to violence." *Farmworker*, 716 F. Supp. 3d at 1323 (alteration accepted). To make that showing, plaintiffs must put forth specific evidence of a risk of harm from their "role in this lawsuit." *Chiquita*, 965 F.3d at 1248. "General evidence" is insufficient. *Id.* That bar is high. In *Chiquita*, "[p]aramilitaries allegedly threatened and attacked a named bellwether plaintiff and her family four months after her deposition." *Id.* Yet the Eleventh Circuit affirmed the district court's denial of anonymity, in part because "there was insufficient evidence of a causal connection between the attack and litigation activity." *Id.* (cleaned up).

MA fails to clear that threshold. His evidence falls into two groups. First, MA cites non-case specific hate crimes generally in Florida and the United

States, some of which occurred as far back as ten years ago. Mot. 12–14. For instance, MA cites a 2015 murder apparently animated by anti-Guatemalan bias. *Id*. Second, MA alleges general fears about future harm to himself largely because of distain toward illegal immigrants. He claims that he faces "harassment, discrimination, and violence" from "members of the public and law enforcement" alike if his identity becomes known. Mot. 11–14. And he asserts that public officials have used "extremely stigmatizing terms" in connection with Alligator Alcatraz. Mot. 12. In support, MA quotes a press release from the Department of Homeland Security and a social media post from President Trump describing the detainees there. *See id*.

These generalized worries are neither particularized nor connect to MA's role in the lawsuit. Neither group provides "specific evidence" showing that MA will face harm absent anonymity. *Chiquita*, 965 F.3d at 1248. His evidence at best establishes an insufficient "generalized" and "subjective . . . fear" of harm. *Id*. at 1251. Many of his allegations—both from news articles and statistics—reflect "generalized fear of hostility in the community." *Farmworker*, 716 F. Supp. 3d at 1323. But the "threat of hostile public reaction to a lawsuit, standing alone, will only with great rarity warrant public anonymity." *Id*. "This is especially true where," as here, "the targets of such threats and harassment are not minors and where the subject at issue does not involve matters of utmost intimacy." *Byrd*, 2023 WL 11760524, at *2. Those fears are even less

11

connected to this particular case because of the temporal distance between much of their evidence and the lack of particularized evidence concerning MA or other immigration detainees at Alligator Alcatraz.[6] *See Butler*, 2025 WL 1634975, at *3 (collecting cases); *City of Vero Beach*, 2019 WL 4277045, at *3 ("Plaintiff provides no evidence that he *personally* faces a risk of physical harm by bringing this case." (emphasis in original)).

And MA's concerns of "social stigma and harassment" are insufficient proof of a risk of *physical* harm. *Doe v. Spring Hill Coll.*, No. 1:23-cv-00340, 2023 WL 8553481, at *2 (S.D. Ala. Dec. 11, 2023) ("Humiliation or embarrassment are not the types of harm this Court contemplates when evaluating real physical harm."); *Doe v. Directions for Mental Health, Inc.*, No. 8:24-cv-02530, 2025 WL 744263, at *2 (M.D. Fla. Mar. 7, 2025) (Jung, J.) (similar). Courts regularly reject stigmatic arguments concerning "deeply stigmatizing" subject matter and hot-button social issues. *See, e.g.*, *Byrd*, 2023 WL 11760524, at *2 n.1 (alcoholism, a suicide attempt, and sexual assault); *Doe v. Alabama Dep't of Corr.*, No. 2:24-cv-455, 2025 WL 942750, at *3–5 (M.D. Ala. Mar. 27, 2025) (victim of prison rape and repeated opioid overdose).

---

[6] MA notes that in *C.M. v. Noem*, No. 1:25-cv-23182 (S.D. Fla.), another court granted a motion for other detainees in Alligator Alcatraz to proceed anonymously. *See* Mot. 14. That motion, however, was unopposed and the paperless order offers no real analysis. *See* Paperless Order, *Noem*, No. 1:25-cv-23182 (S.D. Fla. July 30, 2025), ECF No. 33.

12

MA's concerns about law enforcement do not establish a threat of physical harm either. MA claims that he fears "retaliation" from "law enforcement." Mot. 11. That assertion is akin to the "general evidence showing that those who oppose paramilitary groups or paramilitary-affiliated entities face risks of paramilitary violence," which was "not enough" to justify anonymity in *Chiquita*. 965 F.3d at 1248 & n.7. At a deeper level, comparing enforcement of laws by lawful authorities to illegal paramilitary violence mixes apples and oranges. MA's argument either assumes (improperly) that law enforcement will use excessive force against him, or (unsurprisingly) collapses this consideration with another *Chiquita* factor, analyzed above, about the risk of enforcement from challenging criminal laws. *See supra* 9.

### B. MA advances a myopic view of what the presumption of judicial openness covers.

Lastly, MA argues that "[t]he use of a pseudonym would not hinder the public's right to information about the ultimate legal question at issue." Mot. 15. But this argument proceeds from a false premise. The presumption of judicial openness does not concern merely a case's "ultimate legal question." Rather, the "public's legitimate interest," of a constitutional dimension, includes "knowing all of the facts involved, including the identities of the parties." *Chiquita*, 965 F.3d at 1247. MA cannot sweep aside the "customary and constitutionally-embedded presumption of openness in judicial proceedings" in so

13

conclusory a fashion. *Id.* If he were right, every judicial proceeding would be anonymous because central legal issues rarely turn on the identity of a party. But the courts are public institutions. Those institutions exist "for the public to serve the public interest," and holding "secret court proceedings" is "anathema to a free society." *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996). Like any litigant, when MA seeks to use those public institutions to achieve his legal goals, he must bear the risk of revealing his identity.

**C. MA's detention is likely a matter of public record and that weighs against anonymity.**

MA's arguments aside, "prior public disclosures pertaining to a party's identity weighs against permission to proceed anonymously." *D.W. v. Grindr, LLC*, No. 8:25-cv-1260, 2025 WL 1786357, at *4 (M.D. Fla. June 27, 2025). Here, MA's detention "weighs *against* anonymity" because it is likely a "matter of public record." *City of Vero Beach*, 2019 WL 4277045, at *3 (emphasis in original); *see also Butler*, 2025 WL 1634975, at *3 ("Plaintiff's status as registered sex offender is already known to the public."); *Grindr, LLC*, 2025 WL 1786357, at *4 (collecting cases).

The names of individuals detained at Alligator Alcatraz have been obtained and widely distributed by members of the media.[7] Continued reporting

---

[7] *See, e.g.*, Ana Ceballos et al., *Is Your Family Member or Client at Alligator Alcatraz? We Obtained a List*, Mia. Herald (July 14, 2025), https://tinyurl.com/ykac58e7.

14

on Alligator Alcatraz detainees suggests that MA's name has already been disclosed to reporters.[8] As of the end of August, reporters had obtained rosters listing the names of more than 1,800 men detained at Alligator Alcatraz. *See id.* The fact that MA's status as an Alligator Alcatraz detainee has likely been made a matter of public record weighs against anonymity. *See City of Vero Beach*, 2019 WL 4277045, at *3; *Butler*, 2025 WL 1634975, at *3; *Grindr, LLC*, 2025 WL 1786357, at *4.

## CONCLUSION

MA's motion to proceed anonymously should be denied.

---

[8] *See* Ben Wieder & Shirsho Dasgupta, *Hundreds of Alligator Alcatraz Detainees Drop off the Grid After Leaving Site*, Mia. Herald (Sept. 16, 2025), https://tinyurl.com/bfeanhfr.

Respectfully submitted on October 1, 2025

JAMES UTHMEIER
  *Attorney General*

/s/ *Robert S. Schenck*
JEFFREY P. DESOUSA (FBN 110951)
  *Acting Solicitor General*
JASON MUEHLHOFF
  *Chief Deputy Solicitor General*
ROBERT S. SCHENCK (FBN 1044532)
  *Assistant Solicitor General*
OFFICE OF THE ATTORNEY GENERAL
The Capitol, PL-01
Tallahassee, FL 32399
Phone: (850) 414-3300
Facsimile: (850) 410-2672
*jeffrey.desousa@myfloridalegal.com*
*jason.muehlhoff@myfloridalegal.com*
*robert.schenck@myfloridalegal.com*

*Counsel for State Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished by electronic service through the CM/ECF Portal on October 1, 2025, to all counsel of record.

/s/ <u>*Robert S. Schenck*</u><br>
Assistant Solicitor General