## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| M.A., on behalf of himself and a class of similarly situated individuals, *et al.*,<br><br>   *Plaintiff*,<br>  v.<br><br>KEVIN GUTHRIE, in his official capacity as Executive Director of the Florida Division of Emergency Management, *et al.*,<br><br>   *Defendants*. | No. 2:25-cv-765-KCD-DNF |

## DECLARATION OF IAN GADEA-GUIDICELLI

I, Ian Gadea-Guidicelli, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct.

1. I am over the age of eighteen and under no mental disability or impairment. I have personal knowledge of the following facts and, if called as a witness, would competently testify to them.

2. I am the State Emergency Response Team (SERT) Chief and Bureau Chief of Response at the Florida Division of Emergency Management (FDEM). I hold a bachelor's degree in International Affairs from Florida State University and a Master's degree in Public Administration from the University of Central Florida. I have worked at FDEM for the past nine years.

3. In my role as SERT Chief and Bureau Chief of Response, I lead the State's preparedness and response to emergencies and disasters. My duties require that I oversee the operations of multiple bureaus and governmental agencies; direct high-

1

level policy and logistical decisions; coordinate with internal and external stakeholders to ensure a unified and effective emergency response; and work closely with Executive Director Guthrie to carry out his mission to protect our State from both natural and man-made disasters and emergencies.

4.      In 2023, Governor Ron DeSantis declared that the illegal immigration crisis affecting our Nation poses a statewide emergency. Ex. 1. He extended that declaration in June 2025. Ex. 2.

5.      In response to the state of emergency, Executive Director Guthrie in June 2025 used his emergency powers to assume control over the Dade-Collier Training and Transition Airport (TNT) to build a detention facility for illegal aliens pending deportation. Ex. 3. TNT is a small airport owned by Miami-Dade County that was used primarily to train pilots. As SERT Chief and Bureau Chief of Response, I am charged with supervising and coordinating FDEM's day-to-day operations at the site. Though I conduct my business primarily from FDEM headquarters in Tallahassee, I have visited the facility several times and am deeply familiar with its operation, physical layout, and on-site structures.

6.      As for the facility's origins, the facility was developed by the State to assist in enforcing federal immigration law. FDEM has considered TNT as a possible staging area for the State's response to a South Florida hurricane given its location and active runway, so it was a natural fit for responding to the illegal immigration emergency. So far as I am aware, at no point did federal officials order the State to construct the site, nor did Florida seek federal permission to build the site.

2

7.     To that end, the facility was entirely State constructed. It was built

pursuant to the emergency powers Governor DeSantis conferred to FDEM in his

orders declaring a statewide illegal immigration emergency. And it was constructed by

state-paid vendors and funded solely with state dollars. Before construction, ICE was

not involved in any way at the facility and did not provide funding for construction.

After construction, ICE conducted a compliance check to ensure the site met federal

standards for housing federal immigration detainees. It is my understanding that ICE

ran the same compliance check that it runs for other state facilities that house federal

immigration detainees, like county jails and correctional facilities, and confirmed that

the facility met ICE's detention standards.

8.     ICE has not paid the state for any detention space from Florida for the

detention of illegal aliens on behalf of ICE at TNT. ICE also has not weighed in on

the number of detainees to be held at the facility.

9.     Detainees are voluntarily housed by the State at TNT on behalf of ICE.

ICE requests detention space from Florida by contacting state officials who operate

TNT. Each detainee at the facility is sent by ICE and ICE physically transfers them to

the facility if the State agrees to house them. Because the State operates this facility of

its own volition, it has significant discretion in deciding over whom it houses there on

behalf of ICE. For example, the State may turn down detainees from the federal

government. If the State no longer wishes to hold a detainee, it can require the federal

government to transport the detainee out of the facility. The State has in fact declined

to hold entire classes of persons, including women, children, and illegal aliens of high

3

medical risk, though it could choose to house those individuals in its discretion. Similarly, if ICE no longer wishes to have a particular detainee housed at the facility or needs to transport them for some other reason, such as medical care, immigration hearings, or executing an order of removal, ICE can transport a detainee out of TNT at any time. ICE coordinates all physical transportation of aliens out of the facility.

10.    FDEM and its sister state agencies—including Florida Department of Corrections; Florida Department of Business & Professional Regulation, Division of Alcoholic Beverages and Tobacco; Florida Department of Law Enforcement; Florida Department of Financial Services; Florida Department of Highway Safety and Motor Vehicles, Division of Highway Patrol; Florida Fish and Wildlife Conservation Commission; Florida Department of Environmental Protection; Florida Lottery; Florida National Guard; and Florida State Guard—operate the site with assistance from FDEM's vendors.

11.    All but one of the State agencies at the facility have entered 287(g) agreements with the federal government. Those agreements, including the date they were signed, are available on ICE's website. *See* ICE, *Delegation of Immigration Authority Section 287(g) Immigration and Nationality Act*, https://tinyurl.com/ytmvnhhk. Those agreements, it is my understanding, allow the federal government to deputize state officers or employees to act as federal immigration officers. FDEM has not executed a 287(g) agreement with the federal government.

12.    Construction and day-to-day maintenance of the site is handled exclusively by state officials and their contractors. The 287(g) deputized state officials

provide oversight, supervision, direction, and control of any work done by state officials or their contractors that is related to immigration functions.

13.    While ICE did not direct or supervise construction or the physical maintenance of TNT, ICE works with Florida as Florida both cooperates with ICE and uses any of the State's delegated authority under 287(g) agreements. It is my understanding that ICE supervises all immigration functions done at the facility. ICE officials sign off on charging documents, review detainers issued by ICE, run federal database system checks, transfer detainees in and out of the facility, interact with detainees as needed, and provide guidance any time immigration authority is exercised. ICE officials routinely communicate and meet with State officials about immigration-related operational matters at TNT. On any given day, there are ICE officers present at TNT for the purpose of coordinating the transportation and physical custody of the detainees, including intake to and outtake from the facility. ICE supervisors also visit the site.

14.    The State plays no role in immigration proceedings involving the detainees; federal officials maintain total control over the prosecution and maintenance of removal proceedings under federal law.

Executed on October ___20___, 2025 in Tallahassee, Florida

_____
Ian Gadea-Guidicelli, SERT Chief

5

# EXHIBIT 1

# STATE OF FLORIDA

## OFFICE OF THE GOVERNOR
## EXECUTIVE ORDER NUMBER 23-03
### (Emergency Management – Illegal Migration)

**WHEREAS**, on September 28, 2021, I issued Executive Order 21-223, directing state law enforcement agencies and other state agencies to take necessary actions to protect Floridians from the dangerous impacts of the Biden Border Crisis; and

**WHEREAS**, in recent months, the numbers of individuals attempting to come to the United States and unauthorized alien interdictions in and around Florida have risen to alarming levels not seen for decades; and

**WHEREAS**, in the first two months of the current fiscal year, U.S. Customs and Border Protection (CBP) has encountered over 460,000 persons attempting entry along the Southwest Border;

**WHEREAS**, during the last fiscal year, over 2.3 million encounters with unauthorized aliens occurred at the Southwest Border; and

**WHEREAS**, as the lawlessness at the Southwest Border continues unabated and the Biden Administration has repeatedly demonstrated its ineptitude at managing the crisis it created, more migrants are seeking entry into the United States; and

**WHEREAS**, from August 2022 to the present, federal, state, and local officials have interdicted approximately 8,042 migrants in Florida's territorial waters alone; and

**WHEREAS**, approximately 300 unauthorized aliens unlawfully entered the Dry Tortugas National Park in the Florida Keys on January 1, 2023; and

County Exhibit A

1

**WHEREAS**, reports indicate an additional 45 unauthorized aliens unlawfully entered Key West on the evening of January 5, 2023; and

**WHEREAS**, intelligence reports reveal additional vessels are en route to Florida shores; and

**WHEREAS**, such a mass migration of unauthorized aliens, including the associated abandonment of vessels, without appropriate support from the federal government, has created an unmanageable strain on local resources and will continue to overburden the capabilities of local governments throughout the state; and

**WHEREAS**, mass migration by sea or land is extremely dangerous and must be discouraged; and

**WHEREAS**, the response from the Biden Administration on this crisis is inadequate and presents an undue burden on local law enforcement to prevent the mass migration that is now occurring and only likely to worsen; and

**WHEREAS**, given the magnitude of this situation, which is further exacerbated by the Biden Administration's failure to secure the border, central coordination, direction, and state resources are needed to identify and respond to the anticipated large influx of unauthorized aliens immigrating from foreign countries to Florida; and

**WHEREAS**, Florida's history of assisting refugees, including Cubans and others fleeing communist regimes, has previously involved support from the federal government and a coordinated effort among federal, state, and local governments; and

**WHEREAS**, as Governor, I am responsible to meet the dangers presented to Florida and its people by this emergency.

**NOW, THEREFORE, I, RON DESANTIS**, as Governor of Florida, by virtue of the authority vested in me by Article IV, Section 1(a) of the Florida Constitution and by the Florida

Emergency Management Act, as amended, and all other applicable laws, promulgate the following

Executive Order, to take immediate effect:

Section 1. Because of the foregoing conditions, I hereby find that the migration of

unauthorized aliens to the State of Florida is likely to constitute a major disaster. I therefore declare

that a state of emergency exists in the State of Florida.

Section 2. I designate the Director of the Division of Emergency Management as the State

Coordinating Officer for the duration of this emergency and direct him to execute the State's

Comprehensive Emergency Management Plan and other response, recovery, and mitigation plans

necessary to cope with the emergency. Pursuant to section 252.36(1)(a), Florida Statutes, I delegate

to the State Coordinating Officer the authority to exercise those powers delineated in sections

252.36(6)-(12), Florida Statutes, which he shall exercise as needed to meet this emergency, subject

to the limitations of section 252.33, Florida Statutes. In exercising the powers delegated by this

Executive Order, the State Coordinating Officer shall confer with the Governor to the fullest extent

practicable. The State Coordinating Officer shall also have the authority to:

A. Invoke and administer the Emergency Management Assistance Compact

("EMAC") (sections 252.921-252.9335, Florida Statutes) and other compacts and agreements

existing between the State of Florida and other states, and the further authority to coordinate the

allocation of resources from such other states that are made available to Florida under such

compacts and agreements so as to best meet this emergency.

B. Seek direct assistance and enter into agreements with any and all agencies of

the federal government as may be needed to meet this emergency.

C. Direct all state, regional, and local governmental agencies, including law

enforcement agencies, to identify personnel needed from those agencies to assist in meeting the

response, recovery, and mitigation needs created by this emergency, and to place all such personnel

under the direct command and coordination of the State Coordinating Officer to meet this emergency.

D. Direct the actions of any state agency as necessary to implement the Federal Emergency Management Agency's National Disaster Recovery Framework.

E. Designate Deputy State Coordinating Officers and Deputy State Disaster Recovery Coordinators, as necessary.

F. Suspend the effect of any statute, rule, or order that would in any way prevent, hinder, or delay any mitigation, response, or recovery action necessary to cope with this emergency. In accordance with section 252.3611(1), Florida Statutes, any order, declaration, or other action suspending a statute or rule shall specify each statute or rule being amended or waived, if applicable, and the expiration date for the order or action.

G. Enter orders as may be needed to implement any of the foregoing powers; however, the requirements of sections 252.46 and 120.54(4), Florida Statutes, do not apply to any such orders issued by the State Coordinating Officer. No such order shall remain in effect beyond the expiration of this Executive Order, including any extension thereof.

Section 3. I order the Adjutant General to activate the Florida National Guard, as needed, to deal with this emergency.

Section 4. I find that the special duties and responsibilities resting upon some state, regional, and local agencies and other governmental bodies in responding to this emergency may require them to suspend or waive the effect of certain statutes, rules, ordinances, and orders they administer. Therefore, I issue the following authorizations:

A. Pursuant to section 252.36(6)(a), Florida Statutes, the Executive Office of the Governor may suspend all statutes and rules affecting budgeting to the extent necessary to provide budget authority for state agencies to cope with this emergency. The requirements of sections

4

252.46 and 120.54(4), Florida Statutes, do not apply to any such suspension issued by the

Executive Office of the Governor. No such suspension shall remain in effect beyond the expiration

of this Executive Order, including any extension thereof.

B. Each state agency may suspend the provisions of any regulatory statute

prescribing the procedures for conduct of state business or the orders or rules of that agency, if

strict compliance with the provisions of any such statute, order, or rule would in any way prevent,

hinder, or delay necessary action in coping with the emergency. This includes, but is not limited

to, the authority to suspend any and all statutes, rules, ordinances, or orders which affect leasing,

printing, purchasing, travel, and the condition of employment and the compensation of employees.

In accordance with section 252.3611(1), Florida Statutes, any agency order, declaration, or other

action suspending a statute or rule shall specify each statute or rule being amended or waived, if

applicable, and the expiration date for the order or action. The requirements of sections 252.46

and 120.54(4), Florida Statutes, shall not apply to any such suspension issued by a state agency.

No such suspension shall remain in effect beyond the expiration of this Executive Order, including

any extension thereof.

C. In accordance with section 252.38(3), Florida Statutes, each political

subdivision within the State of Florida may waive the procedures and formalities otherwise

required of the political subdivision by law pertaining to:

1) Performance of public work and taking whatever prudent action is

necessary to ensure the health, safety, and welfare of the community;

2) Following local procurement and contracting policies;

3) Entering into contracts; however, political subdivisions are cautioned

against entering into time and materials contracts without a ceiling as defined by 2 C.F.R.

200.318(j) or cost plus percentage contracts as defined by 2 C.F.R. 200.324(d);

5

4) Incurring obligations;

5) Employment of permanent and temporary workers;

6) Utilization of volunteer workers;

7) Rental of equipment;

8) Acquisition and distribution, with or without compensation, of supplies, materials, and facilities; and

9) Appropriation and expenditure of public funds.

D.  All agencies whose employees are certified as disaster service volunteers within the meaning of section 110.120(2)(d), Florida Statutes, may, in accordance with section 110.120(3), Florida Statutes, release any such employees for such service as requested by the employee to meet this emergency.

Section 5. I find that the demands placed upon funds specifically appropriated to state and local agencies for disaster relief or response are unreasonably great and that such funds may be inadequate to pay the costs of coping with this emergency.  In accordance with section 252.37(2)(b), Florida Statutes, I direct that sufficient funding be made available, as needed, by transferring and expending moneys from the Emergency Preparedness and Response Fund created under section 252.3711, Florida Statutes.

In accordance with section 252.37(2)(a), Florida Statutes, state agencies responding to this emergency must first spend funds specifically appropriated for disaster relief or response. If no specifically appropriated funds exist, or if funds specifically appropriated are exhausted, state agencies are authorized to spend funds from the Emergency Preparedness and Response Fund through the procedures outlined in Memorandum No. 22-046, Emergency Preparedness and Response.

Section 6. All state agencies entering emergency orders, emergency declarations, or other emergency actions in response to this emergency shall advise the State Coordinating Officer contemporaneously or as soon as practicable thereafter, and, pursuant to section 252.36(3)(b), Florida Statutes, shall submit the order or declaration to the Division of Administrative Hearings within five days of issuance.

Section 7. Medical professionals and workers, social workers, and counselors with good and valid professional licenses issued by states other than the State of Florida may render such services in Florida during this emergency for persons affected by this emergency with the condition that such services be rendered to such persons free of charge, and with the further condition that such services be rendered under the auspices of the American Red Cross or the Florida Department of Health.

Section 8. All actions taken by the Director of the Division of Emergency Management with respect to this emergency before the issuance of this Executive Order are ratified.

Section 9. This Executive Order is effective immediately and shall expire sixty (60) days from this date unless extended.



IN TESTIMONY WHEREOF, I have hereunto set my hand and caused the Great Seal of the State of Florida to be affixed, at Tallahassee, this 6th day of January, 2023.

RON DESANTIS, GOVERNOR

ATTEST:

SECRETARY OF STATE

7

# EXHIBIT 2

# STATE OF FLORIDA

## OFFICE OF THE GOVERNOR
## EXECUTIVE ORDER NUMBER 25-120

**(Emergency Management – Extension of Executive Order 23-03 – Illegal Immigration)**

**WHEREAS,** on January 6, 2023, I issued Executive Order 23-03, declaring a state of emergency in Florida due to the mass migration of illegal aliens to Florida; and

**WHEREAS,** Executive Order 23-03, as subsequently extended by Executive Order 25-75, expires on June 3, 2025, unless extended; and

**WHEREAS,** an extension of Executive Order 23-03 is necessary because the large influx and number of illegal aliens within the State remains and the response from the Biden Administration was inadequate; and

**WHEREAS,** this ongoing crisis continues to strain local resources and requires the continued coordination, direction, and resources of the State of Florida.

**NOW, THEREFORE, I, RON DESANTIS,** as Governor of Florida, by virtue of the authority vested in me by Article IV, Section l(a) of the Florida Constitution and by the Florida Emergency Management Act, as amended, and all other applicable laws, promulgate the following Executive Order, to take immediate effect:

Section 1. The state of emergency and all provisions of Executive Order 23-03 are renewed for sixty (60) days following the date of this Executive Order.

Section 2. Except as amended herein, Executive Order 23-03 is ratified and reaffirmed.

County Exhibit B

1

Section 3. This Executive Order is effective immediately.

IN TESTIMONY WHEREOF, I have hereunto set my hand and caused the Great Seal of the State of Florida to be affixed, at Tallahassee, this 2nd day of June, 2025.

RON DESANTIS, GOVERNOR

ATTEST:

SECRETARY OF STATE

FILED
2025 JUN -2 AM 9:20
DEPARTMENT OF STATE
TALLAHASSEE, FL

2

# EXHIBIT 3



# STATE OF FLORIDA
# DIVISION OF EMERGENCY MANAGEMENT



**Ron DeSantis**, *Governor*                                                                 **Kevin Guthrie,** *Executive Director*

**VIA ELECTRONIC MAIL**

June 23, 2025

The Honorable Daniella Levine Cava
Mayor, Miami-Dade County
Stephen P. Clark Center
111 NW 1st Street
Miami, FL 33128

**Re: Notice of Intent to Utilize the Dade-Collier Training and Transition Airport (TNT)**

Dear Mayor Levine Cava,

I am in receipt of your "Response to Letter of Intent for Purchase of TNT" dated June 23, 2025. On behalf of the State of Florida and the Florida Division of Emergency Management (the "Division"), this letter serves as notice that the Division intends to utilize the Dade-Collier Training and Transition Airport, located at 54575 Tamiami Trail E, Ochopee, Florida, 34141 (the "Property"), pursuant to Governor DeSantis's emergency powers under section 252.36(6)(b) and (i), Florida Statutes, and delegated to me as the State Coordinating Officer in Executive Order 23-03, which remains in effect and was most recently extended by Executive Order 25-120. The Division's utilization of the Property will last no longer than the duration of the state of emergency.

While the negotiations to purchase the property are underway, the Division will begin immediate utilization of the improved area of the site, as I now deem it necessary to meet the Division's current operational demands in coping with the emergency. Time is of the essence. We must act swiftly to ensure readiness and continuity in our statewide operations to assist the federal government with immigration enforcement. The Division remains committed to working collaboratively with all appropriate authorities.

I appreciate your support of statewide emergency operations and your commitment to our shared mission to safeguard the people of Florida. I request that your team coordinate with the Division's General Counsel, Stephanie Houp, Esq., should there be any questions or concerns regarding this matter.

Thank you for your partnership and prompt attention.

Sincerely,

Kevin Guthrie
Executive Director
Florida Division of Emergency Management
Kevin.Guthrie@em.myflorida.com
(850) 294-8250

County Exhibit E

**DIVISION HEADQUARTERS**
2555 Shumard Oak Boulevard
Tallahassee, FL 32399-2100

Telephone: 850-815-4000
www.FloridaDisaster.org

**STATE LOGISTICS RESPONSE CENTER**
2702 Directors Row
Orlando, FL 32809-5631